# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WAYNE MITCHELL,<br><br>    *Plaintiff,*<br><br>v.<br><br>PEOPLE FOR PEOPLE CHARTER SCHOOL, INC., *et al.*,<br><br>    *Defendants.* | CIVIL ACTION<br>NO. 17-2416 |

**PAPPERT, J.**                                                                                      April 27, 2018

## MEMORANDUM

Wayne Mitchell sued People for People Charter School, Inc. and several individuals under the Fair Labor Standards Act, the Pennsylvania Minimum Wage Act, the Pennsylvania Wage Payment and Collection Law and Pennsylvania common law for Defendant's failure to pay Mitchell overtime. (Compl., ECF No. 1.) Mitchell and People for People have resolved these claims. They jointly move for approval of their Settlement Agreement pursuant to the Court's duty to ensure that FLSA wage-payment settlements represent a "fair and reasonable resolution of a bona fide dispute." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982). The Court grants the Motion for the reasons that follow.

I

Mitchell worked as a janitor for People for People for approximately three years. (*See* Compl. at ¶¶ 48, 49; Answer at ¶¶ 48, 49, ECF No. 11.) He alleges that approximately one year into his employment, he was designated as an "overtime-exempt salaried employee," after which he was no longer compensated for overtime work. (Compl. at ¶¶ 52, 53, 55.) Mitchell alleges that he complained, to no avail, to his

1

supervisors about his inadequate compensation. (Compl. at ¶¶ 56–60.) On May 26, 2017, Mitchell filed suit to recover compensation for hours worked in excess for forty hours per week from May 2015 to February 2017. (Compl. at ¶ 61)

II

"[T]he FLSA was designed to give specific minimum protections to individual workers and to ensure that each employee covered by the Act would receive a fair day's pay for a fair day's work." *Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (quotation omitted). An employee's right to a minimum wage and overtime pay under the FLSA "cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." *Id.* at 740 (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945)). Accordingly, FLSA claims may be compromised or settled in just two ways: "(1) a compromise supervised by the Department of Labor pursuant to 29 U.S.C. § 216(c); or (2) a compromise approved by the district court pursuant to 29 U.S.C. § 216(b)." *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 522 (E.D. Pa. 2016). Although the Third Circuit Court of Appeals has not addressed whether parties can settle FLSA actions claiming unpaid wages without court approval, district courts within the Circuit have followed the approach endorsed by a majority of courts and assumed that judicial approval is necessary. *See Howard v. Phila. Housing Auth.*, 197 F. Supp. 3d 773 (E.D. Pa. 2016); *Kraus*, 155 F. Supp. 3d at 516; *see also Bettger v. Crossmark, Inc.*, No. 13-cv-2030, 2015 WL 279754, at *3 (M.D. Pa. Jan. 22, 2015) (collecting cases).

Courts therefore play an important role in ensuring that plaintiffs in FLSA lawsuits do not effectively waive their statutory rights. To that end, "[w]hen employees

bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food*, 679 F.2d at 1353.

Courts presented with a proposed settlement of an FLSA claim first determine whether it resolves a bona fide dispute, *i.e.*, a dispute that involves "factual issues rather than legal issues such as the statute's coverage and applicability." *Kraus*, 155 F. Supp. 3d at 530 (quoting *Creed v. Benco Dental Supply Co.*, No. 12-01571, 2013 WL 5276109, at *1 (M.D. Pa. Sept. 17, 2013)). If the dispute is bona fide, the Court engages in a two-part inquiry: (1) the Court must determine if the settlement is fair and reasonable to the employee or employees involved; and (2) "whether the agreement furthers or impermissibly frustrates the implementation of FLSA in the workplace." *See McGee v. Ann's Choice, Inc.*, No. 12–cv–2664, 2014 WL 2514582, at *2 (E.D. Pa. June 4, 2014).

III

A

A proposed settlement resolves a bona fide dispute where the settlement's terms "reflect a reasonable compromise over issues, such as back wages, that are actually in dispute and are not a mere waiver of statutory rights brought about by an employer's overreaching." *Howard*, 197 F. Supp. 3d at 777 (internal quotation and citation omitted). "In other words, for a bona fide dispute to exist, the dispute must fall within the contours of the FLSA and there must be evidence of the defendant's intent to reject or actual rejection of that claim when it is presented." *Id.* (quotation and citation omitted).

The Settlement Agreement here resolves a bona fide dispute. In its answer, People for People denied Mitchell's factual allegations of wrongdoing (Answer at ¶¶ 53, 55.), a position the school maintains in the Agreement. (Mot. for Approval, Ex. A "Settlement Agreement" at 2.) *See Howard*, 197 F. Supp. 3d at 778.

B

Courts often consider a number of factors to determine whether a proposed settlement is fair and reasonable, including: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risk of establishing damages; (6) risk of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); s*ee also, e.g., In re Chickie's & Pete's Wage & Hour Litig.*, No. 12–cv–6820, 2014 WL 911718, at *3 (E.D. Pa. Mar. 7, 2014).

Some of these factors are of "little help, if not irrelevant, in the single-plaintiff context." *Howard v. Phila. Housing. Auth.*, 197 F. Supp. 3d 773, 777 n.1 (E.D. Pa. 2016). "Thus, even though *Girsh* may suggest the type of factors to be considered in assessing a private FLSA settlement, courts need not fall into the alluring trap of mechanically applying *Girsh* simply because it is the court's duty to assess whether the proposed agreement is fair." *Id.* (quoting *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 523 n. 3. (E.D. Pa. 2016)).

Prior to their settlement conference with Magistrate Judge Hey, counsel investigated the claims and exchanged documents and written discovery, including Mitchell's timesheets, in order to gain "an appreciation of the merits and risks of proceeding to trial before negotiating the Settlement Agreement." *Howard*, 197 F. Supp. 3d at 778. Proceeding to trial would require additional discovery for both parties—including additional written discovery and several depositions. (Memo. in Support of Request for Approval at 4, ECF No. 19-1.) Although Mitchell can use his time sheets as evidence of his claim, he reportedly failed to "punch out" on at least six occasions, complicating his ability to accurately prove damages. Further, in order to recover liquidated damages at trial, Mitchell would have to show that People for People was not acting in good faith when denying Mitchell overtime. (Memo. at 5.)

People for People has agreed to pay Mitchell $13,831.54 in unpaid overtime wages, $5,839.46 in liquidated damages, and $15,329.00 in attorneys' fees and costs. (Memo. at 6.) Under the agreement, Mitchell is recovering all of the unpaid overtime wages he believes he is owed based on the available timesheets. (*Id*.) He is also recovering a modest amount of liquidated damages. Although his recovery at trial for liquidated damages could be higher, Mitchell also risks recovering no liquidated damages if he fails to show People for People was not acting in good faith. (*Id*. at 5–6.) Given the risks involved in proceeding to trial and the efficiencies gained by early and mutual resolution of the dispute, the Agreement proposed in this case is fair and reasonable.

The provision for attorneys' fees and costs is also fair and reasonable. In statutory fee shifting cases, courts use the lodestar formula, "which requires

multiplying the number of hours reasonably expended by a reasonable hourly rate." *Loughner v. University of Pittsburgh*, 260 F.3d 173, 178 (3d Cir. 2001); *see In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 333 (3d Cir. 1998) ("The lodestar method is more commonly applied in statutory fee-shifting cases, and is designed to reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation.").

The parties have allocated $14,000 for fees and $1,329 for costs. (Memo. at 6.) Colleen Heckman and Fernando Rivera, associates at Sidkoff, Pincus & Green, P.C. and Mitchell's counsel, have been practicing labor and employment law for approximately three and four years respectively, with experience in FLSA, PMWA and PWPCL cases. (Memo., Ex. B "Heckman Affidavit" at ¶¶ 5, 7, 9, 11.) Heckman and Rivera spent approximately 77 hours on this case. (*Id.* at ¶ 14.) The Philadelphia Community Legal Services attorney fee schedule lists an hourly rate range of $220–$255 for lawyers with two to five years of experience.[1] The proposed settlement amount of $14,000 is less than the lodestar of $16,940, calculated by applying the lower rate of $220. Moreover, $14,000 represents 40% of the total settlement amount, which is not unreasonable. *See In re Lucent Techs., Inc., Sec. Litig.*, 327 F. Supp. 2d 426, 442 (D.N.J. 2004) ("[T]he customary contingent fee [in a non-class action case] would likely range between 30% and 40% of the recovery.").

---

[1] Heckman provides that SPG charges clients $300 an hour for their time. The Court is applying the CLS fee schedule, however, because it "has been approvingly cited by the Third Circuit as being well developed and has been found by the Eastern District of Pennsylvania to be a fair reflection of the prevailing market rates in Philadelphia." *Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001) (quotation omitted). The CLS fee schedule is available at http://clsphila.org/about-cls/attorney-fees.

C.

Finally, the Agreement does not impermissibly frustrate the implementation of the FLSA.  For example, it does not include broad waiver provisions, *see Rubbo v. PeopleScout, Inc.*, No. 16-4903, 2017 WL 2010311, at *4 (E.D. Pa. May 11, 2017), or a confidentiality agreement, *see Marby v. Hildebrandt*, No. 14-5525, 2015 WL 5025810, at *2 (E.D. Pa. Aug. 24, 2015), nor did the parties attempt to file the settlement agreement under seal, *see Lyons v. Gerhard's Inc.*, No. 14-6693, 2015 WL 4378514, at *3 (E.D. Pa. July 16, 2015).  Instead, the Agreement contains carefully tailored provisions:  Mitchell releases only his wage and hour-based claims and "[t]he release contained [in this Agreement] does not affect or limit [*inter alia*] any other claims that, under controlling law, may not be released by this Settlement Agreement."  (Mot. Ex. A "Settlement Agreement" at ¶ 7.)


An appropriate Order follows.


BY THE COURT:

***/s/ Gerald J. Pappert***
GERALD J. PAPPERT, J.